IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| CYNTHIA GREENE, | ) | Case No. 1:18-cv-0892 |
|---|---|---|
| Plaintiff, | ) ) | MAGISTRATE JUDGE |
| v. | ) ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) ) | |

**I.     Introduction**

Plaintiff, Cynthia Greene, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. The parties consented to my jurisdiction. ECF Doc. 12.

Because substantial evidence supports the ALJ's decision and because Greene fails to identify any error of law in the ALJ's evaluation of her claim, the final decision of the Commissioner must be AFFIRMED.

**II.    Procedural History**

Cynthia Greene protectively applied for DIB on May 15, 2015. (Tr. 189). She alleged a disability onset date of January 1, 2013. (Tr. 189). Her application was denied initially on August 28, 2015 (Tr. 132-135) and on reconsideration on November 16, 2015. (Tr. 139-145). Greene requested a hearing and Administrative Law Judge ("ALJ") William Leland heard the case on May 5, 2017. (Tr. 58-103). On August 29, 2017, the ALJ issued a decision finding that

Greene was not disabled. (Tr.37-52). On March 20, 2018, the Appeals Council denied Greene's request for further review, rendering the ALJ's conclusion the final decision of the Commissioner. (Tr. 1-4). On April 19, 2018, Greene filed this action to challenge the Commissioner's denial of her claim. [ECF Doc. 1](ECF Doc. 1).

**III.    Evidence**

    **A.    Relevant Medical Evidence**

Greene was born on February 1, 1965 and was 47 years old on her alleged onset date. (Tr. 189). She completed the 12th grade and had work experience as a hand packager, cleaner, housekeeper, and mail clerk. (Tr. 97, 257, 323).

During the relevant time period, Greene was treated for bipolar disorder, unspecified schizophrenia, and anxiety. (Tr. 256). She started treating with Dr. James Bukuts, a psychiatrist, no later than May 2013. (Tr. 425). On May 8, 2013, she reported that she was mostly happy and denied suicidal ideation. She was working part-time at the Dollar Store. (Tr. 425).

Treatment notes from June 2014 show that Vistaril was added to Greene's medication regimen. She reported adequate benefits when she was at work. Greene reported benefits from a higher does of Lexapro for depression and anxiety. (Tr. 343).

On July 17, 2014, Green met with Dr. Bukuts for management of her schizophrenia and anxiety. She reported that her sleep and appetite were stable in 2014 and throughout 2015. (Tr. 345, 527). On September 11, 2014 (and at other appointments), Dr. Bukuts noted that Greene tolerated Lexapro, which gave her a sense of calmness with limited increased emotionality. (Tr. 346, 349, 353, 355, 357). Greene received counseling services at the Centers for Families and Children from Christina Bota, LPCC. (Tr. 520-548).

Greene denied feeling sad or nervous in June 2015. She reported that her mood was "alright." Her affect was euthymic, and she had no hallucinations. (Tr. 528). Greene reported that her reduced hours at work led to her applying for social security again. (Tr. 529).

On January 4, 2016, Greene's mother was in ICU. Greene was not sleeping well. Ms. Bota noted that she was making minimal progress. (Tr. 540).

On January 5, 2016, Greene's brother called Ms. Bota to express concerns regarding Greene's functioning. (Tr. 542). On January 6, 2016, Greene's brother attended a counseling session with her to voice concerns regarding her mental health, her need to take medication as prescribed, her lack of eating regular meals and not sleeping well. (Tr. 543). Greene was defensive and anxious. She affirmed "feeling" her "stalker" around her mother's hospital. (Tr. 689). Ms. Bota performed a home visit with Greene on January 11, 2016. (Tr. 545). Greene was not eating or sleeping well. She had not left her house because she was "sick," but she agreed that it could be anxiety. On January 12, 2016, Greene's brother called Ms. Bota again expressing more concerns about his sister. (Tr. 546).

In February 2016, Greene reported improvement in her depression, anxiety, and sleep with a higher dosage of Zyprexa. (Tr. 610). Greene's treatment goal was to stay out of the hospital. (Tr. 612).

In March 2016, Greene reported taking Vistaril more consistently with better relief of her panic attacks. (Tr. 614). In April 2016, Dr. Bukuts noted that Greene experienced limited increased emotionality (Tr. 618) and her therapist noted that she appeared to be at baseline functioning. (Tr. 619).

Greene's brother called Ms. Bota on June 14, 2016 and reported that Greene had been more agitated, irritable, and confused with memory loss and decreased motivation for activities

3

of daily living. (Tr. 625). On July 1, 2016, Greene reported some anxiety over her mother's health. Treatment notes state that Greene's medications were causing her to sleep 11 hours a day. (Tr. 626). On July 28, 2016, Dr. Greene noted that Greene was being unreasonable by still talking about having a baby. (Tr. 674).

Greene continued to treat with Dr. Bukuts. (Tr. 672-715). Greene showed signs of improvement in 2016. In July 2016, she reported better relief from medication for her panic attacks. (Tr. 629). She was managing her stressors and had an improved outlook. (Tr. 658). Her sleep and appetite were stable. (Tr. 679).

Green met with her internist, Dr. Ali Saleh, on July 22, 2016. Dr. Saleh found that Greene was not physically disabled but was seeing a psychiatrist for mental illness and may be disabled for that. (Tr. 646, 648). On January 17, 2017, Greene met with Dr. Saleh for a yearly exam. He noted that her schizophrenia was well managed, and she remained functional and self-sufficient. (Tr. 744).

Greene met with Dr. Bukuts on March 6, 2017. He had not seen her for two to three months. She reported benefits from a higher dose of medication for depression and anxiety with improved sleep. (Tr. 714).

    **B.    Opinion Evidence**

        **1.    Treating Physician – James T. Bukuts**

            **a.    July 2016**

Dr. Bukuts completed a Medical Source Statement questionnaire on July 28, 2016. (Tr. 632-633). He identified Greene's diagnosis as schizophrenia, chronic paranoid type. (Tr. 633). He opined that she could rarely interact with supervisors or deal with work stress. (Tr. 632). He further opined that she could rarely understand, remember, and carry out detailed as well as

complex instructions. He opined that she could rarely behave in an emotionally stable manner. (Tr. 633). He found that she could occasionally follow work rules, use judgment, maintain attention and concentration, respond to changes, deal with the public, and coworkers, function independently, work in coordination with others, complete a normal workday and workweek, socialize, and relate predictably in social situations. He found that she could occasionally to frequently understand, remember, and carry out simple job instructions, manage funds and schedules, and leave home on her own. (Tr. 633-634).

### b. May 2017

Dr. Bukuts completed another Medical Source Statement on May 5, 2017. (Tr. 751-752). Dr. Bukuts opined that Greene was markedly limited in her ability to understand and learn terms, instructions, or procedures, describe work activity to someone else, identify and solve problems, sequence multi-step activities, use reason and judgment to make work related decision, to ask for help when needed, handle conflicts with others, respond to requests, suggestions, criticism, correction and challenges, keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness, ignore or avoid distractions while working, change activities or work settings without being disruptive, work close to or with others without interrupting or distracting them, sustain an ordinary routine or regular attendance at work, work a full day without needing more than the allotted number or length or rest periods, adapt to changes, manage psychologically based symptoms, and set realistic goals. Dr. Bukut had been treating Greene for four to five years. In support of his assessment, Dr. Bukuts cited Greene's diagnosis of chronic paranoid schizophrenia and major depressive disorder with periodic delusions and bizarre thinking that interfered with Greene's ability to deal with the public. (Tr. 751-752).

5

### 2. Consulting Psychologist – Alison Flowers, Psy.D., August 2015

Alison Flowers, Psy.D., performed a consultative examination of Flowers on August 12, 2015. (Tr. 494-502). Greene acted appropriately during the examination and had a euthymic mood. (Tr. 501). Dr. Flowers noted that Greene reported numerous manic episodes and hospitalizations. She quickly decompensated when she stopped taking her medications. (Tr. 499-500). Dr. Flowers diagnosed bipolar disorder with psychotic features and anxious distress, most recent episode manic, in partial remission with medication management. (Tr. 499). Dr. Flowers concluded that Greene could perform simple tasks, but might have difficulty with complex or multi-step tasks because she had difficulty remembering objects after a delay and had a limited digit span. (Tr. 500-501). She also opined that if Greene stopped taking her medicine and had a manic episode, she would likely have difficulty managing the day to day pressures at work. (Tr. 501).

### 3. State Agency Reviewing Physicians

Dr. Paul Tangeman reviewed Greene's records on August 28, 2015 and opined that she had severe affective disorders, schizophrenia and other psychotic disorders. (Tr. 113). He opined that she was limited to being able to do simple, routine tasks with low production demands and work quotas with support at time of changes. (Tr. 115-116).

On November 11, 2015, Tonnie Hoyle, Psy.D., reviewed Greene's records and found that there was insufficient evidence to offer an opinion. (Tr. 126).

### C. Relevant Testimonial Evidence

#### 1. Greene's Testimony

Greene testified at the hearing on May 5, 2017. (Tr. 64-96). She lived alone in her mother's house, but her brother took care of paying all of the bills. (Tr. 65, 93). She had a

driver's license and drove to visit her mother every other day. (Tr. 66). Her mother moved to a nursing home two years before the hearing. Before that, Greene helped care for her. (Tr. 66-67). Greene had been engaged for three or four years. She saw her fiancé every day, but they did not live together. (Tr. 67-68).

Greene worked at a Dollar Tree store from 2013 to 2016. She worked ten to fifteen hours a week. (Tr. 69). She stopped working there because her mother got sick and went to the hospital. She also had prior work experience in housekeeping. (Tr. 72-74). She also worked at a company packing books and delivering mail. (Tr. 74-77).

Greene felt that she could not work due to both mental and physical limitations. She had high blood pressure and heart problems, but they were controlled with medication. (Tr. 80). Overall, she felt that her mental health had improved a little bit. Her medication was helping, but she was having some side effects that she had not discussed with her doctor yet. She was still hearing voices almost every night. (Tr. 82).

### 2. Testimony of Paula Zinzsmeister, Vocational Expert

Vocational Expert ("VE"), Paula Zinzsmeister, also testified during the hearing. (Tr. 96-Ms. Zinzsmeister considered Greene's past work to be as a hand packager; cleaner - housekeeping; and mail clerk. (Tr. 97). The ALJ instructed the VE to not consider the former work as hand packager when considering the hypothetical questions. The other two jobs were at the light exertional level. (Tr. 98).

The VE testified that an individual of Greene's age, education and past work experience who was limited to simple, routine, and repetitive tasks, but not at a production rate pace, i.e. assembly work; who was limited to simple work-related decisions in using good judgment in dealing with changes in the work setting; and who was able to frequently interact with

7

supervisors and occasionally with co-workers and the public, would be able to perform Green's past jobs. (Tr. 98). The individual could also perform the jobs of cleaner and polisher and cafeteria attendant. (Tr. 98). If the individual was limited to no interaction with the public and occasional interaction with supervisors, the VE opined that she could still perform Greene's previous jobs. She could also perform the jobs of routing clerk, inspector and hand packager. (Tr. 99-100). The VE testified that being off task 20% of the workday or missing more than two days of work per month would preclude employment.

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. Greene had the following severe impairments: schizophrenia, bipolar disorder, and anxiety disorder. (Tr. 43).

5. Greene had the residual functional capacity to perform a full range of work at all exertional levels but was limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); limited to simple work-related decisions in using her judgment and dealing with changes in the work setting; she was able to occasionally interact with supervisors and co-workers, but no interaction with the public. (Tr. 45).

6. Greene was capable of performing past work as a cleaner/housekeeper and mail clerk. (Tr. 50).

Based on all his findings, the ALJ determined that Greene was not disabled. (Tr. 51-52).

## V. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

8

might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner may not be reversed just because the record contains substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); see also *Her v. Comm'r of Soc. Sec.*, 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." See *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen,* 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

The court also must determine whether the ALJ decided the case using the correct legal standards. If not, reversal is required unless the legal error was harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,*

9

774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); accord *Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue,* No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

In considering a Social Security benefits application, the Social Security Administration must follow a five step sequential analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B.     Treating Physician Rule[1]

Greene contends that the ALJ erred by assigning less than controlling weight to Dr. Bukuts' opinions and by failing to give good reasons for the assigned weight. ECF Doc. 14 at Page ID# 811-815. The administrative regulations implementing the Social Security Act impose standards for weighing medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). In making disability determinations, an ALJ must evaluate the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013). The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Even if the ALJ does not give the opinion controlling weight, the treating source opinion is still entitled to significant deference or weight that takes into account the length of the treatment and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ is not required to explain how he considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); see also *Cole*, 661 F.3d at 938. ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned.")

---

[1] 20 CFR §§ 416.927 applies to Greene's claim because it was filed before March 27, 2017.

The ALJ's "good reasons" must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). As the Sixth Circuit has noted,

> [t]he conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to the treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id.* at 377.

A failure to follow these procedural requirements "denotes a lack of substantial evidence, even [when] the conclusion of the ALJ may be justified based on the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007). The Sixth Circuit Court of Appeals "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned." *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (alteration in original) (internal quotation marks omitted).

> Regarding Dr. Bukuts' opinions, the ALJ assigned little weight stating:
>
> Notably, the level of limitation alleged is not consistent with the overall evidence and the claimant's conservative mental health treatment since the period under review. In fact, the record supports that the claimant's psychological signs and symptoms improved with treatment, for example, she described a resolution of her auditory hallucinations, stable sleep and appetite, and improvement with her anxiety and panic (10F/1-2, 10F/4-5, 13F/5-6, 15F/12-15, 16F/31-32). Additionally, she exhibited an overall sense of calmness and limited increased emotionality (1F/3-4, 10F/20, 13F/5-6, 15F/12-15, 16F/31-32).

12

(Tr. 49).

The ALJ was required to provide good reasons for assigning little weight to Dr. Bukuts' opinions, and he did. He cited specific treatment notes from the record showing that Greene's mental impairment had improved with treatment. The ALJ cited some of Greene's more recent records showing that her condition had stabilized, and that medication was helping manage her mental impairments. (Tr. 610-611, 614-615, 679-670, 713-714). Thus, the ALJ's conclusion that Dr. Bukuts' opinions were not consistent with the record was supported by substantial evidence in the record.

Greene argues that evidence in the record supported Dr. Bukuts' opinions. However, the evidence that Greene cites is the 2015 report of Dr. Flowers and a note from Greene's internist, who found that Greene was not disabled physically – but "probably would be eligible for a disability status" on her mental impairments. (Tr. 646). The report from Dr. Flowers was an older report. The ALJ cited more recent records showing improvement. The internist was not treating Greene for her mental impairments, so his note provides little insight into Ms. Greene's mental limitations. Thus, the evidence Greene cites is somewhat outdated and/or irrelevant to the determination of whether she was disabled.

Moreover, even if the evidence cited by Greene was compelling, the fact that evidence existed in the record to support a different outcome does not invalidate the ALJ's decision. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec*., 203 F.3d 288, 289-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." See *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). This is so because the Commissioner enjoys

13

a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen,* 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984). Here, the ALJ cited specific records showing that Greene's mental impairment were being managed with medication and that her condition was improving. Because he cited specific records showing that Dr. Bukuts' opinions were not consistent with the evidence as a whole, he did not violate the agency's treating physician rule. Greene fails to identify a misapplication of the law and the Commissioner's decision must be affirmed.

### C. Past Relevant Work

Greene also contends that the ALJ's decision that she could return to past relevant work was not supported by substantial evidence. [ECF Doc. 14 at Page ID# 817-818](). The foundation of this argument is the same as Greene's first argument. She argues that, because the ALJ improperly assigned less than controlling weight to the opinions of Dr. Bukuts, the ALJ's RFC determination did not incorporate Greene's need for more than the allotted number or length of rest periods. Greene cites the VE's testimony that there would be no work for an individual who was off-task 20% of the workday or absent more than two days a month. She argues that, if the ALJ had assigned controlling weight to Dr. Bukuts, he would have found that all work was precluded due to the amount of time she would be off-task and/or miss work. Id.

As explained above, the ALJ was not required to assign controlling weight to the opinions of Dr. Bukuts or to any of the specific limitations contained within his opinions. The ALJ explained the weight he assigned to Dr. Bukuts and he provided good reasons for this weight. The RFC is an administrative finding reserved to the Commissioner based on his evaluation of the totality of the record evidence. *See Shepard v. Comm'r of Soc. Sec.,* 705 F. App'x 435, 442 (6th Cir. 2017), citing *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th

14

Cir. 2013). The ALJ was not required to incorporate limitations into the RFC or hypothetical questions unless he found that they were well supported by the evidence. He was required to incorporate only those limitations he accepted as credible. *Casey v. Sec'y of HHS,* 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ was not required to include all of Dr. Bukuts' opined limitations in the RFC or corresponding questions to the VE. The ALJ included in the RFC the limitations he found to be credible and based his questions to the VE on these findings. The ALJ was permitted to rely on the VE's testimony that an individual with Greene's RFC was capable of performing her previous jobs. *See Varley v. Sec'y of HHS,* 820 F.2d 777, 779 (6th Cir. 1987). Greene fails to identify any error of law in the ALJ's evaluation of her claim.

## VI. Conclusion

Because substantial evidence supported the ALJ's decision and because Greene has not identified any error of law in the ALJ's evaluation of her claim, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Dated: March 13, 2019

Thomas M. Parker
United States Magistrate Judge